# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlesretta Meade, Robert N.C. Nix, : 
Honorable Russell M. Nigro, Honorable : 
Alan K. Silberstein, Anthony Lewis Jr., : 
and Molly Goldsmith, personal : 
representative of the estate of Howard : 
M. Goldsmith, deceased : 
                              : 
                v. : 
                             : No. 1309 C.D. 2014
City of Philadelphia, : No. 1332 C.D. 2014
          Appellant : Submitted: June 18, 2015


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                HONORABLE BERNARD L. McGINLEY, Judge (P.)
                HONORABLE P. KEVIN BROBSON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY               FILED:  December 30, 2015

The City of Philadelphia (City) appeals the orders of the Court of Common Pleas of Philadelphia County (common pleas court) that granted the summary judgment motion of Charlesretta Meade, Esq. (Meade), Robert N. C. Nix III, Esq., Secretary (Nix); Honorable Russell M. Nigro (Nigro); Honorable Alan K. Silberstein (Silberstein); Molly Goldsmith, personal representative of the estate of Howard M. Goldsmith, deceased (Goldsmith); and Anthony M. Lewis, Jr. (Lewis), (collectively, the Board Members) for attorney fees for litigation activity necessary to restore the appellate function of the Board of Revision of Taxes (BRT), that entered summary judgment in favor of Nix for full back pay for his statutory term of office at the salary due and fixed for that term of office prior to the invalidated Salary Reduction Ordinance (SO) less the City's recoupment claim against him, entered summary judgment in favor of the Board Members for attorney fees

relating to obtaining payment of back pay after this Court declared the SO unconstitutional and payment became due with the amounts readily calculable, entered summary judgment in favor of the Board Members for post-judgment interest from the date of this Court's determination that the SO was unconstitutional to the date of payment of back pay at the statutory rate of six percent, and awarded the Board Members attorney fees in the amount of $329,085.00.

The Board Members cross appeal from the common pleas court's order that failed to award attorney fees for legal work in opposition to the SO and the denial of summary judgment as to the Board Members' claim for compensation for adverse tax consequences of lump sum payments.

## I.  Background.

The Board Members voluntarily agreed to relinquish their real property assessment responsibilities.  Pursuant to a Memorandum of Understanding dated October 5, 2009, and executed by the Mayor's Office of the City, the Finance Director's Office of the City, and the BRT, responsibility for assessments would be vested in the Finance Director or his designee.  The BRT would be responsible for hearing and resolving appeals from those assessments.  The Memorandum of Understanding was effective October 5, 2009, and was to cover a six month term with mutual renewals.  The renewals could total six months.  The Memorandum of Understanding was not renewed.

On December 17, 2009, City Council voted to remove from the BRT the BRT's assessment responsibilities and its appellate responsibilities. Subject to voter referendum, City Council created two new City agencies to assume these responsibilities – an Office of Property Assessment and a Board of Property Assessment Appeals. City Council also voted to abolish the BRT. City Council provided that the newly created appeal board would receive the following compensation: $50,000 for the chairman, $45,000 for the secretary, and $150/meeting for the remaining members up to a maximum of $40,000 per year.

On March 8, 2010, the Board Members sought to enjoin the referendum. The Board Members asked our Pennsylvania Supreme Court to accept King's Bench jurisdiction over the suit and preclude the City from transferring the appellate function of the BRT. On April 22, 2010, the City Council voted to reduce the salaries of the BRT members immediately. Pursuant to this salary ordinance, the chairman of the BRT's salary was reduced from $75,000 to $50,000 per year, the salary of the secretary was reduced from $72,000 to $45,000 per year and the salaries of the other members were reduced from $70,000 per year to a payment of $150 per meeting up to a maximum of $40,000 per year.

Our Pennsylvania Supreme Court dismissed the suit without prejudice. Board of Revision of Taxes v. City of Philadelphia, 993 A.2d 873 (Pa. 2010). The City argued that the lawsuit was premature because the BRT would not be abolished unless and until the voters approved the referendum. In the referendum, voters voted by a margin of more than two to one to transfer both the appellate and assessment functions from the BRT.

The Board Members then filed suit in this Court and contended that the City lacked authority to eliminate the BRT's appellate function and also complained about the reduction in salary. This Court transferred the case to the common pleas court. The members of the Board again pursued King's Bench jurisdiction in the Supreme Court. The Supreme Court declined to exercise jurisdiction over the salary dispute but accepted jurisdiction over the appellate function claim. The Supreme Court held that the City had authority to remove the assessment function from the BRT but lacked authority to eliminate the appellate function. Board of Revision of Taxes v. City of Philadelphia, 4 A.3d 610 (Pa. 2010) (BRT II). The Supreme Court allowed the transfer of the assessment function to proceed but enjoined the transfer of the appellate function and the creation of the new appellate board. The case was then returned to the common pleas court for the Board members to pursue their salary claim.

In the salary claim, the Board Members contended that the reduction of salary violated Article III, Section 27 of the Pennsylvania Constitution which provides that "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." The Board members claimed that they were public officers within the meaning of Article III, Section 27 and that the City had no authority to reduce their salaries until the completion of their current terms of office.

On June 17, 2011, the common pleas court entered judgment in favor of the Board Members. On June 22, 2011, the City moved for reconsideration. On July 22, 2011, the common pleas court entered an order staying the interlocutory

4

order and scheduled a mandatory settlement conference. On July 29, 2011, the common pleas court stayed the June 17, 2011, order and expedited the filing of summary judgment motions so that a final order could be entered on the constitutional issue and make it ripe for appeal.

Nigro and Goldsmith moved for summary judgment. The City also moved for summary judgment as did the remaining Board Members. The common pleas court granted Nigro and Goldsmith's summary judgment motion. By order dated December 2, 2011, the common pleas court denied the summary judgment motion of the remaining Board Members. In a separate order also dated December 2, 2011, the common pleas court denied the summary judgment motion of the City.

The common pleas court concluded that Nigro and Goldsmith were "public officers" with respect to Article III, Section 27. The common pleas court further determined that because the Board Members were public officers, their salaries could not be reduced in the middle of their terms.

The City appealed to this Court and contended that the constitutional prohibition against a mid-term diminution in salary did not apply to government officials who serve at the pleasure of their appointing authority[1] and also did not apply to government officials who experienced a lawful and substantial mid-term diminution in their statutory responsibilities.

---

[1] The appointing authority here was a majority of the judges of the Court of Common Pleas of Philadelphia County.

5

This Court determined that the Board Members were public officers within the meaning of Article III, Section 27 of the Pennsylvania Constitution.[2] The Board Members' duties were set by statute, and the Board members served for a set term. Further, the Pennsylvania Supreme Court held in BRT II that the BRT's duties were quasi-judicial in character. Additionally, the BRT's services are an essential part of the real estate taxation system. This Court agreed with the common pleas court that Article III, Section 27 of the Pennsylvania Constitution prohibited the reduction in salary in the middle of their terms for Board members Nigro and Goldsmith. Meade v. City of Philadelphia, 65 A.3d 1031 (Pa. Cmwlth. 2013).

The case then returned to the common pleas court for a resolution of all outstanding issues with respect to the remaining Board Members. The City withdrew all defenses against Silberstein and settled all claims with Meade which left only the claims of Nix and Lewis as well as the City's counterclaim against Nix. On April 25, 2013, the City began processing back pay payments to Nigro, Goldsmith, and Silberstein. The payments were made on June 2, 2013.

## II. Summary Judgment Motions.

On July 22, 2013, the parties renewed their summary judgment motions in the common pleas court. The common pleas court had previously denied the motions without prejudice while the case was on appeal to this Court.

---

[2] The common pleas court certified its order as final pursuant to Pa.R.A.P. 341(c).

6

## A. The Board Members' Motion.

In their motion for summary judgment, the Board members alleged:

11. As a result of the recent Commonwealth Court decision . . . the City finally handed over to three of the individual plaintiffs (Board members Nigro, Goldsmith and Silberstein) the base amount of back pay that was illegally withheld from them since April 2010 due to the invalid SO [Salary Ordinance].

12. However, the City has refused to make those Plaintiffs whole by continuing to withhold interest for the three-year-plus delay, economic losses directly attributable to the illegal delay and payment of attorneys fees needed to vindicate the requirements of the laws and the Constitution of the Commonwealth.

13. The City has also shockingly refused to deliver any base backpay or forward pay at all to Plaintiffs Lewis and Nix, by instead continuing to apply to them during their respective terms *the invalidated unconstitutional SO* and in utter rejection of the applicable constitutional, statutory and case law establishing an absolute ban against the City's midterm tampering with the salary and emoluments of the BRT plaintiffs as public officers.

14. As set forth in the accompanying Memorandum, Plaintiffs Nigro, Silberstein and Goldsmith are entitled to full restitution in order to make them truly whole and without any loss due to the City's unconstitutional behavior.

15. Those Plaintiffs are entitled to interest at the legal rate on their backpay, economic loss due to the increased taxes they incurred as a result of the City's delay in payment, as set forth in the reports of their respective accountants, and, on the occasion of the conclusion of all matters pertaining to them, to an award of attorneys fees and expenses.

16. Without an award of interest at the legal rate on the backpay which wrongfully was withheld from them, those Plaintiffs will continue to suffer wrongful economic loss solely due to the City's forbidden midterm tampering with their fixed salary and emoluments.

17. Without compensation for the economic loss due to the increased taxes they have incurred as a result of the City's delay in payment, as set forth in the reports of their respective accountants, those Plaintiffs will continue to suffer legally impermissible economic loss solely due to the City's mid-term tampering with their fixed salary and emoluments.

18. Without an award for the attorneys' fees and expenses made necessary by the City's illegal conduct and by its refusal to provide independent outside counsel despite the conflict of interest of the City Law Department, the Constitutional guarantee of fixed pay and emoluments during a public officer's fixed term would be illusory, because it would drain the value of the salary and emoluments being guaranteed anytime a paying authority chose to violate the constitutional prohibition.

19. Pursuant to Article III, §27, the City's Defense and Indemnification Ordinance and otherwise, therefore, BRT Plaintiffs are entitled to an award for their attorneys' fees and costs lest they be made to continue to suffer economic loss due solely to the City's midterm tampering with their fixed salary and emoluments.

20. BRT members Nix and Lewis likewise are entitled to full restitution in order to make them completely whole and without loss due to the City's violation of Article III, Section 27 of the Pennsylvania Constitution.

21. At the moment it is not possible to calculate interest and additional economic losses of Plaintiffs Lewis and Nix because the City is determined as of this date vexatiously to disregard the clear and unanimous judicial adjudication that its SO was itself invalid and unconstitutional.

8

22. As to Plaintiffs Lewis and Nix, therefore, the City continues contemptuously and in bad faith to evolve pretexts and excuses for overruling the Constitution and the Judiciary.

23. It does so through asserted set-offs against the pay of Mr. Nix, and a legally untenable so-called 'acquiescence' defense against him and Mr. Lewis.

24. While none of these pretexts has any substantial basis, as demonstrated in the Memorandum and through supporting Declarations, they cannot serve as a reason to withhold the specific pay that the Constitution mandated and that the City had no right to reduce under the inherently unconstitutional and invalid 2010 SO.

25. The City's acquiescence defense is a last ditch and vexing excuse for the City to declare victory over the Courts and the Constitution and to deny pay precisely under the terms of the SO regardless of its unconstitutionality and judicial invalidation.
. . . .
27. Accordingly, this Court should dismiss with prejudice the affirmative defenses against plaintiff Nix of acquiescence, unclean hands and recoupment; the affirmative defenses against plaintiff Lewis of acquiescence; the counterclaims associated with the affirmative defenses against both those Plaintiffs; and make those Plaintiffs whole by compelling the City to pay full backpay and forward pay respectively. (Emphasis in original.)

Motion for Summary Judgment of Plaintiffs Honorable Russell M. Nigro, Honorable Alan K. Silberstein, Robert C. Nix III, Esq., Howard M. Goldsmith, Esq., and Anthony Lewis, June 22, 2013, Paragraph Nos. 11-25, and 27 at 3-6; Reproduced Record (R.R.) at RR391a-RR394a.

The Board Members requested that summary judgment be granted in their favor to direct the City to pay interest at the legal rate on the backpay,

economic loss due to increased taxes that they incurred as a result of the City's delay in payment, and a full award of attorneys fees and expenses to Nigro, Silberstein, and Goldsmith. The Board Members requested that Nix receive full backpay for his entire statutory term of office at the salary and emoluments due and fixed for the term of office prior to the invalidated SO minus the pay he actually received as well as interest and any economic loss he suffered. Further, the Board Members sought the dismissal of any claims by the City against Nix. With respect to Lewis, the Board Members sought full backpay as well as forward pay until the end of his statutory term at the salary and emoluments due and fixed for the term of office prior to the invalidated SO minus $2,100.00 actually received by him during that period as well as interest and economic loss he suffered as well as the dismissal of the City's affirmative defense of acquiescence against Lewis.

### B. The City's Motion.

In its motion for summary judgment, the City sought summary judgment on all remaining counts of Lewis's complaint, partial summary judgment in its favor and against Nix on all remaining counts of Nix's complaint, and summary judgment in favor of the City in its counterclaims against Nix. After the deduction of $53,475 in recoupment with respect to Nix, the City would agree to pay Nix $24,015.00.

### C. Disposition of Motions.

Following oral argument and the submission of briefs, by order dated January 2, 2014, the common pleas court entered summary judgment in favor of the Board Members for attorney fees for litigation activity necessary to restore the

10

appellate function of the BRT, denied any remaining claims for attorney fees, entered summary judgment in favor of Nix for full backpay for his statutory term of office at the salary due and fixed for that term of office prior to the invalidated SO, and granted summary judgment on the City's recoupment claim against Nix. The common pleas court entered summary judgment in favor of the Board Members for attorney fees related to obtaining payment for backpay after this Court declared the SO unconstitutional and the payment came due with the amounts readily calculable. The common pleas court entered summary judgment in favor of the Board Members for post-judgment interest from the date of this Court's decision that declared the SO unconstitutional to the date of the payment of backpay at the rate of six percent. The common pleas court granted summary judgment in favor of the City with respect to pre-judgment interest. The common pleas court denied summary judgment for the Board Members' claim for compensation for the adverse tax consequences of lump sum payments. On January 13, 2014, the common pleas court amended its January 2, 2014, order and ruled that the Board members were entitled to pre-judgment interest from the time their salaries were illegally reduced until the time of full payment.

On March 5, 2014, the Board Members moved to mold the award of interest and attorney fees and sought an attorney fee award of $329,085.00 based on a rate of $450.00 per hour for services rendered by their two attorneys. The Board Members also sought interest in the following amounts: Robert C. Nix, III, Esquire $9,100.00, Honorable Russell M. Nigro $25,200.00, Honorable Alan K. Silberstein $7,500.50, Howard M. Goldsmith, Esquire $25,300.00, and Anthony Lewis, Jr. $40,000.80.

11

The City responded with a lengthy brief and provided line by line analysis of the timesheets prepared by the Board Members' attorneys and argued that the bulk of the hours claimed were not encompassed by the common pleas court's fee award, that the requested rates were not supported, and that the Board Members' interest calculations were mistaken.

By order dated June 19, 2014, the common pleas court awarded the interest the Board Members sought as well as the amount of attorney fees they requested, $329,085.00.

### III.  Issues before this Court.

### A.  The City.

The City contends that the common pleas court erred when it held that the City had an obligation to provide the individual Board Members with counsel to contest the constitutionality of the reorganization of the BRT, when there was no statutory source that requires such fee shifting to the Board Members in their individual capacities.  The City also contends that the common pleas court erred when it held that the City owed attorney fees to Nix and Lewis for time spent seeking prompt payment of their backpay award after it became due, when the City had valid affirmative defenses pending.  The City contends that the common pleas court erred when it quantified the fee award where that award reimbursed the Board Members for non-reimbursable time, including litigating a different case on behalf of a different plaintiff, pursuing unreasonable litigation strategies, seeding attorney fees, and litigation matters which were not covered by the common pleas court's fee order, and where the Board Members offered no proof of counsel's

12

actual billing rates. The City further asserts that the common pleas court erred when it adopted the Board Members' proposed interest calculations, when the Board Members offered no support whatsoever for their calculations.[3]

## 1. Attorney Fees for Litigation to Restore the Appellate Function of the BRT.

Initially, the City contends that the common pleas court awarded attorney fees for litigation activity necessary to restore the appellate function of the BRT (Category One Fees).

With respect to this issue, the common pleas court determined:

By letter dated January 15, 2010, the BRT Members requested the City Solicitor appoint them conflict-free counsel to contest the legality of the abolition of their offices. . . . The City Solicitor responded that the BRT Members 'are apparently seeking to pursue a position in their own person [sic] interest, not in their official capacity.' . . . . Clearly this is factually inaccurate, or at best incomplete, because the Members sought to restore the BRT to its rightful authority for all citizens and to enjoin the unlawful activity of the City Council, the Mayor, and the vote. The City Solicitor also purported to preclude the Board from instituting legal action, because they could only do so with the authorization of the Law Department. . . . Accordingly, Plaintiffs [Board Members] hired private counsel at their own expense to contest the legality of the abolition of the appellate function of the BRT. This was clearly an action taken for

---

[3]     This Court's review of a common pleas court's grant of summary judgment is limited to determining whether the common pleas court made an error of law or abused its discretion. Salerno v. LaBarr, 632 A.2d 1002 (Pa. Cmwlth. 1993), *petition for allowance of appeal denied*, 644 A.2d 740 (Pa. 1994). Summary judgment should only be granted in a clear case and the moving party bears the burden of demonstrating that no material issue of fact remains. The record must be reviewed in the light most favorable to the non-moving party. Id.

the public, to enforce the public right to an independent and not an administration-appointed entity to hear real estate appeals as required by state law. . . .

The City's Defense and Indemnification Ordinance requires the City Solicitor to represent City officers in any action taken against them in the scope of their official duties. . . .

Contrary to the City Solicitor's assertion in her January 22, 2010 letter that Plaintiffs [Board Members] were solely pursuing their individual interests, Plaintiffs [Board Members] requested counsel for their action to contest the constitutionality of the abolition of the BRT's review function. The City's action to abolish the BRT Members' offices in their entirety is an action against the Members in their official capacity, although it also has personal implications. The BRT Members brought the action to determine whether state law gave Philadelphia citizens the right to appeal to the BRT, members of which were appointed by the Board of Judges for a term of office, and not by an administrative entity appointed by the Mayor.

The City Solicitor precluded individual BRT Members from bringing a claim on behalf of the BRT. Clearly, the City Solicitor, in her varied roles, had a conflict of interest but refused to provide alternative, non-conflicted counsel. The Members were forced to advocate for the reinstatement of the appellate function of the BRT at their own expense.

The City Solicitor of Philadelphia has three distinct roles, as a mayoral appointee the City Solicitor should support the Mayor's policy positions such as changing the City Charter to abolish the BRT. As the City's lawyer, the City Solicitor's office defends all lawsuits against the City including this one, but pursuant to the authority granted in the City Charter §8-410, the City Solicitor may issue private or public opinions on legal matters 'binding' on City departments. In this latter role, the City Solicitor may challenge unconstitutional actions by

14

City Council even when approved by the charter change referendum.

No opinion of the City Solicitor was ever produced in evidence that the Reorganization Ordinance was constitutional. . . . The City Solicitor's letter of January 22, 2010 was written, not as counsel to the BRT . . . but as a member of the Administration advocating a political position, not stating a neutral legal opinion. If the City Solicitor can preclude litigation in her cabinet or advocacy role, illegality and unconstitutional City behavior will go unchallenged. The City's Defense and Indemnification Ordinance is designed for this exact situation – precluding the Solicitor from becoming dictatorial in policy matters. Summary judgment was granted in favor of Plaintiffs [Board Members] for attorney fees for all litigation which was necessary to establish the appellate function of the BRT. (Footnotes omitted).

Common Pleas Court Opinion, September 3, 2014, (Opinion) at 8-10.

The City asserts that the Defense and Indemnification Ordinance does not support a right to attorney fees.

The Defense and Indemnification Ordinance provides as follows:

The City Solicitor shall defend and the City of Philadelphia shall indemnify and hold harmless the officers and employees of the City, whether currently employed by the City or not, against and from any and all personal liabilities, actions, causes of action, and any and all claims made against them for acts performed within the scope of their employment.

Philadelphia Code §20-702.

15

The City argues that the indemnification language is generic and is historically understood to require employers to provide representation and indemnification to employees in lawsuits by third parties against employees where the employee was performing his job. While the common pleas court determined that the City's action to abolish the Board Members' offices was an action under Section 20-702 of the City Code that required the City to reimburse the Board Members for their legal fees, the City asserts that Section 20-702 does not apply for two reasons: first, the City's decision to abolish the BRT's function was not an "action" within the meaning of Section 20-702, and, second, the ordinance only applies to interactions between an employee and third parties.

Section 1991 of the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. §1991, defines an "action" as "any suit or proceeding in any court of this Commonwealth." Although the Act applies to statutes enacted by the General Assembly, our Pennsylvania Supreme Court has held that the principles contained in the Act are to be employed when a court attempts to construe a local ordinance. Patricca v. Zoning Board of Adjustment, 590 A.2d 744, 747-748 (Pa. 1991).

With respect to whether the abolishment of the BRT is an "action" within the meaning of Section 20-702 of the City Code, the City argues that the terms "action" and "cause of action" within the Defense and Indemnification Ordinance only suggest an intent to defend an employee against lawsuits in court. This Court agrees that the plain language of the Defense and Indemnification Ordinance which applies to lawsuits against city officials for acts performed in the course and scope of their employment does not apply to defending against a suit to

16

change the course and scope of that employment. Further, the City did not bring an "action" in court against the Board Members when it sought to abolish their offices. Applying the definition of an "action" contained in the Act to the Defense and Indemnification Ordinance does not support the Board Members' position. Furthermore, it does not make sense for the indemnification portion of the ordinance to apply to suits between the City and its employees.[4] Under Section 1922 of the Act, 1 Pa.C.S. §1922, courts are to interpret acts under the assumption that the General Assembly did not intend an absurd result. As the City points out, it would be absurd for the City to indemnify its adversary in the very suit between those adversaries. This Court agrees with the City that the common pleas court erred when it awarded the Category One Fees.

## 2.  Attorney Fees for Lewis and Nix (Category Two Fees).

The City next contends that the common pleas court erred when it awarded attorney fees for Lewis and Nix related to time spent obtaining payment after this Court declared that the SO was unconstitutional. The City asserts that four of the Board Members received immediate payment. Lewis did not receive his payment immediately because the City asserted that Lewis had agreed to a lower salary. However, once this defense was resolved, the City paid Lewis his backpay. Nix did not receive immediate payment because the City raised two issues. One of these issues, recoupment, ultimately negated a substantial portion of

---

[4] Although the City makes a lengthy argument concerning the application of the Philadelphia City Charter to the issue of representation of the Board Members, the Board Members and the City both agree that the Charter did not serve as a basis for the imposition of fees.

17

the amount due to Nix.  Nix suggested that the City pay him $24,015, the difference between the backpay owed to him and the City's recoupment defenses.

With respect to the payment of these attorney fees which the City describes as Category 2 fees, the common pleas court reasoned:

> On March 20, 2013, the Commonwealth Court declared the Salary Reduction Ordinance unconstitutional.  As of that date, the payment to Plaintiffs [Board Members] of full backpay at the pre-Ordinance fixed rate became due. The sums were readily calculable.  Plaintiffs Nigro, Goldsmith, and Silberstein received their appropriate amounts of backpay.  However, Plaintiff Lewis had only received his awarded payments on October 3, 2013 at the time of Oral Argument. . . . Only after Oral Argument did Plaintiff Nix receive the portion of Court-mandated backpay owed and not contested by the City. . . .
>
> [42] Pa.C.S. §2503 provides,
>
> 'The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:  (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate, or vexatious conduct during the pendency of the matter.'
>
> As of the Commonweath's [sic] March 20, 2013 decision, payment to all BRT Members whose salaries had been illegality [sic] reduced was due and readily calculable.  Regardless of any recoupment or other claims the City had against the Plaintiffs [Board Members], the difference which was owed and uncontested should have been paid.  Even though the City presented no defense, the City required Plaintiffs Lewis and Nix to continue legal action to obtain backpay owed and calculable.  The failure to pay judicially-determined, owed amounts without any justification other than bald tactical litigation refusal is 'dilatory, obdurate,

18

and vexatious conduct during the pendency' . . . of an action. Summary Judgment was properly entered on behalf of Plaintiffs Lewis and Nix for all money fees they accrued to obtain their already established and due backpay from the City. (Footnotes omitted.)

Opinion at 14-15.

### a. Lewis.

With respect to Lewis, the City argues that the common pleas court made a factual mistake in that the City presented an acquiescence defense for Lewis which if successful would have resulted in the payment of no backpay. However, the Board Members point out that the City deprived Lewis of the full salary to which he became entitled from the imposition of the SO. By September 20, 2013, the City had withheld from Lewis the sum of $229,355.85. See Declaration of Valerie D. Hayes, March 31, 2014, at 1; R.R. at RR376a.

The "acquiescence defense" presented by the City states that where an employee accepts a reduced salary payment after signing and submitting a requisition for that amount and labels the requisition as the "amount payable," the City is then entitled to an inference that the employee acquiesced to the lower rate of pay, even if the employee were otherwise entitled to a higher rate. See Schwartz v. Philadelphia, 12 A.2d 294 (Pa. 1940). The City believed that Lewis signed his timesheet which authorized a lower rate of pay. When the Board Members informed the City that Lewis had not in fact signed the timesheet on July 22, 2013, the City withdrew its defense and submitted a payment requisition by August 12, 2013, and paid Lewis a month later.

19

It is unclear why the City could not make the determination that Lewis did not sign the timesheet before the Board Members pointed it out to it. As a result, the City had no defense for its failure to pay Lewis the backpay to which he was entitled. The common pleas court did not err when it determined that the City's conduct was dilatory, obdurate, and vexatious conduct with respect to Lewis.

### b. Nix.

With respect to Nix, the City asserts that it had no obligation to make a partial payment to Nix until Nix demanded a partial payment. The City argues that when it withdrew its argument concerning the Sunshine Act, 65 Pa.C.S. §§701-716, it understood that it owed Nix $77,490 in backpay less $53,475 which was the value of the recoupment. However, the City argues that it had no duty to make a partial payment until Nix demanded payment.

Regarding the payment to Nix, the common pleas court determined that once this Court determined that the Board Members' salaries could not be altered mid-term because the SO was unconstitutional, Nix was entitled to full payment for his statutory term of office at the salary amount fixed for that term prior to the City's unconstitutional modification:

> During the course of Plaintiff Nix' [sic] term in office, he received three improper salary increases. In 1997, the Chair of the BRT recommended to the City Administration that Plaintiff Nix receive a raise of $3,100 per year. This increased amount was paid to Plaintiff Nix from 1997 until 2005. On January 25, 2005, Major [sic] Street signed into law the Salary Increase Ordinance which increased the salaries of all BRT Members by

20

$10,000 per year, to be applied retroactively to July 1, 2004. Plaintiff Nix's salary was increased retroactively to $72,000 per year. Finally, from July 2005 until March 2007 the City's Payroll Unit mistakenly granted Plaintiff Nix an unauthorized cost of living increase, which raised his salary from $72,000 to $73,440 in fiscal year 2005-06, and to $75,643 in the fiscal year 2006-07. In March 2007, the Payroll unit recognized the error and reverted the salary back to the previous amount.

When a defendant has a claim against plaintiff arising out of the same transaction as plaintiff's claim against defendant, recoupment operates to reduce any recovery owed to plaintiff by the amount of defendant's claim against plaintiff. . . .
. . . .
Plaintiff Nix received a mid-term salary increase in the good faith belief that such increase was proper. However, despite his good faith belief in its validity, even bolstered by existing court authority, the funds must be returned upon a finding that the raise had been in fact unconstitutional. Plaintiff Nix must return the $26,667 he received in improper mid-term salary increases. . . .

The salaries of BRT Members can only be established by ordinance. . . . The raises administratively given to Plaintiff Nix by the City Administration and the cost of living increase were not done by Ordinance, and therefore were unauthorized under state law. A public official who receives unauthorized payments must return the funds to the public entity, regardless of good faith or mistake. . . . Plaintiff Nix's recovery must be reduced by the amounts he received in unauthorized raises and cost of living increases. (Footnotes omitted.)

Opinion at 11-13.

Further, the City argues that it had no obligation to pay Nix until he made a demand for payment. The City analogizes this circumstance to insurance law. This Court cannot agree with the City that this case is akin to insurance law.

21

Once this Court ruled that the SO was unconstitutional, the City had a duty to promptly pay the amount owed minus the recoupment claim.

The City also argues that because the Board Members did not spend time attempting to compel the City to make payment that there can be no fee award for such time. The City argues that it is only responsible for the fees the Board Members incurred as a result of the City's failure to make payment. A review of the record reveals that the City asserted in its response to the Board Members' motion to mold that the Board Members did spend significant time in the summary judgment proceedings seeking backpay. The City contradicts itself. This Court determines that the common pleas court did not err when it awarded payment for these attorney fees.

### 3. Amount of Attorney Fees.

The City next contends that even if this Court does affirm the award of attorney fees, the quantification of those fees should be reversed. The Board Members requested $329,085.00 in attorney fees with $141,885.00 coming from Category One fees and $187,200.00 in Category Two fees. The City argues that the common pleas court erred when it adopted the Board Members' proposed fees in total. The City asserts that this Court should significantly reduce the hours claimed and should hold that the Board Members have not established the reasonableness of the claimed rates.

With respect to the Category One fees, this Court has already agreed herein with the City that the common pleas court erred when it assessed the

22

Category One Fees. This Court further agrees with the City that the amount of attorney fees of $329,088.00 should be reduced by the amount of Category One Fees, $141,885.00, which reduces the total to $187,200.00.

With respect to the Category Two fees, the City asserts that this Court should significantly reduce these fees. The Board Members claim fees for all the time spent on this case after this Court's decision regardless of whether the time was spent attempting to procure partial payment for Nix. According to the City, the claim for 416 hours of time for a total of $187,200.00 is inherently unreasonable given that only $24,015 was recovered on Nix's behalf.

Specifically, the City argues that no time spent from March 20, 2013, until June 3, 2013, should constitute part of the fees because the City cannot be responsible for any time spent prior to July 2013, because there was no ripened partial payment until the City withdrew its Sunshine Act argument at that time. Further, the City argues that the Board Members received attorney fees for time spent analyzing the Commonwealth Court Order (52.7 hours), on the Meade settlement (3.7 hours), developing an argument that was never made (11.1 hours), and preparing for a conference in the common pleas court (5.4 hours) and to which the Board Members were not entitled because the time would have been spent regardless of any delays in payment.

The City ignores the fact that it agreed in its Response to Plaintiffs' Motion to Mold that 61.6 hours spent reviewing this Court's opinion and preparing for a conference in the common pleas court were compensable. As to the

remaining hours, the common pleas court awarded attorney fees based on 42 Pa.C.S. §2503(7) for dilatory, obdurate, or vexatious conduct. In reviewing a trial court's award of attorneys' fees, this Court may only consider "whether the trial court palpably abused its discretion in making a fee award." Thunberg v. Strause, 682 A.2d 295, 299 (Pa. 1996). This Court will not disturb the award if the record supports the common pleas court's finding that the sanctioned party violated Section 2503 of the Judicial Code, 42 Pa.C.S. §2503, absent an abuse of discretion. In re Estate of Schram, 696 A.2d 1206, 1213 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 705 A.2d 1313 (Pa. 1997). "Conduct is 'dilatory' where the record demonstrates that [a participant] displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." In re Estate of Burger, 852 A.2d 385, 391 (Pa. Super. 2004), *affirmed*, 898 A.2d 547 (Pa. 2006).

Although the City argues that all of this time spent on the Meade settlement and in developing an argument that was never made would have been spent regardless of any delays in payment, the City provided no evidence that that was the case. This Court finds that the common pleas court did not abuse its discretion when it awarded attorney fees for these 14.8 hours.

The City next contends that the common pleas court erred when it awarded $140,400 for the 312.0 hours of time spent between June 6, 2013, and November 20, 2013. The City asserts that almost all of this time was spent seeking attorney fees, seeking additional make-whole relief from the common pleas court,

and refuting the City's defenses to the payment of backpay. The City asserts that none of this time was related to prompt payment.

With respect to seeking attorney fees, the City contends that under Pennsylvania law time spent seeking attorney fees is not compensable. In <u>Brose v. Keystone</u>, 710 A.2d 637 (Pa. Cmwlth. 1998), this Court held that an attorney was only entitled to fees where the work performed is on behalf of the client's interest and not the attorney's. In an affidavit, Nigro stated that the Board Members agreed to assign to their counsel their right to be compensated for the expense of outside counsel. Declaration of Honorable Russell M. Nigro, July 17, 2013, at 3; R.R. at RR91a.

Once again, the City ignores the fact that it conceded in its Response to the Motion to Mold that 124.8 hours were compensable as they related to backpay and 7.8 hours[5] were related to the implementation of an order of the common pleas court. In addition, the City conceded that 18.9 hours were compensable for meeting with Nix and preparing a stipulation for the common pleas court.

The City estimates that ten percent of the attorney time was allocable to obtaining attorney fees because approximately ten percent of the Board Members' brief to the common pleas court dealt with this issue.

---

[5]     Inexplicably, the City now argues that these 7.8 hours are now not compensable.

25

This Court does not agree. First, although the Board Members may have assigned their rights to attorney fees to their counsel, it is not clear from the record, what the reason was, if any, for the assignment. Given the scant record before us, this Court cannot make such a determination. Second, the City estimates that ten percent of the hours were allocable to obtaining attorney fees because approximately ten percent of the Board Members' brief to the common pleas court dealt with this issue. This Court cannot rely on this estimate because the number of pages in a brief devoted to an issue does not necessarily equate to the amount of time spent on research, writing, and discussing an issue. The City does not cite to any case law to support this calculation. Further, given that the City previously conceded that over 150 hours of the 312 at issue were compensable, it is unclear whether the ten percent is based on the total of 312 or the remaining 162.

As to the remaining hours, the City disputes the Board Members' request for reimbursement for the amount of time spent seeking additional make whole relief under Article III, Section 27 of the Pennsylvania Constitution. The City states that the common pleas court, with respect to the Category Two fees only, awarded attorney fees for time spent in pursuit of backpay. The City alleges that fifty percent of the pages of the summary judgment motion were attributable to their make whole argument. Again, this Court cannot rely on this estimate for the same reasons set out with respect to the attorney fee issue in the summary judgment motion.

The City also argues that the Board Members were not entitled to fees for time spent refuting the City's defenses to the payment of backpay. Considering that the common pleas court ordered that attorney fees be paid relating to the backpay issue, this Court does not agree with the City. The City makes the same generalization about the time spent as forty percent. This Court finds that the common pleas court did not abuse its discretion.

The City next contends that the common pleas court erred when it awarded fees based on a billing rate of $450.00 per hour because there is no evidence of record to establish the rate was reasonable. It appears that the common pleas court determined, on its own, that this was a fair billing rate. The City raised this issue before the common pleas court in its response to the motion to mold the award of interest and attorney fees. The party seeking the award of attorney fees bears the burden of establishing that the requested hourly rates meet the standard of reasonableness based on the prevailing market rate in the relevant community. The attorney's skill, experience, and reputation are also factors. Loughner v. University of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001). "The starting point in ascertaining a reasonable hourly rate 'is the attorney's usual billing rate but this is not dipositive.'" Id. citing Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). Given that the record does not contain the billing rate of the Board Members' attorneys, this Court vacates the portion of the order that calculated the attorney fee award and remands to the common pleas court for a resolution of this issue.

27

The City next contends that the Category One fees should only reflect the claims of the parties before the common pleas court. Because only three of the six Board Members were still before the common pleas court when it made its award, the City argues that the award should be reduced. As this Court has already determined that the trial court erred when it awarded the Category One fees, this Court need not address this issue.

## 4. Interest.

Finally, the City contends that the common pleas court erred when it awarded the amount of interest to the Board Members that it did. On March 5, 2014, the Board Members sought interest in the following amounts: Nix - $9,100, Nigro-$25,200, Goldsmith-$25,300, Lewis-$40,000.80, and Silberstein-$7,500.50 for a total of $107,101.30. On March 10, 2014, the City responded to the Board Members with its own calculation of interest: Nix - $6,854.07, Nigro- $19,816.41, Goldsmith - $19,828.13, Lewis - $24,353.85, and Silberstein - $9,329.19 for a total of $80,181.65. On April 1, 2014, the City issued a formal response to the Board Members' motion that requested interest and asserted that the Board Members had failed to respond to the City's calculations, that the City had documentation to support its calculations, and that the parties hoped to resolve their differences.

The common pleas court adopted the interest amounts set forth by the Board Members. The common pleas court determined:

> Under Pennsylvania law, prejudgment interest may be recovered for a breach of contract only if '(1) a defendant commits a breach of a contract to pay a definite sum of money; or (2) a defendant commits a breach of contract to render a performance the value of which is

28

ascertainable by mathematical calculation from a standard fixed in the contract; or (4) [sic] a defendant commits a breach of contract to render a performance the value of which in money is ascertainable from established market prices of the subject matter. . . . 'Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.' . . . .

When the City passed the Salary Reduction Ordinance and slashed the BRT Members' salaries, it breached its contract to pay the members at their previously established salary rates. The amount owed to Plaintiffs [Board Members] prior to the illegal reduction is a definite and readily calculable sum of money. Summary Judgment was properly entered in favor of Plaintiffs [Board Members] for interest at the statutory rate of six percent. . . from the date of the illegal salary decrease until the date of the full payment by the City. (Footnotes omitted.)

Opinion at 13-14.

The Board Members assert that the City waived the argument that there was no support for the Board Members' calculation of interest because the City did not object to the calculations in the common pleas court. The City asserts that it did object in its April 1, 2014, response to the Board Members' motion. Specifically, a review of the record indicates that the City set forth its interest total for the five Board Members which was the same as the interest total that the City previously supplied to the Board Members. The City stated that it had received no response from the Board Members but it was not surprised because the calculations were difficult to perform. The City did not request that the common pleas court get involved because it believed that the Board Members would agree to their calculations once they had a chance to review them. The City's response was

29

unusual in that it acknowledged that there were differences in the interest amounts submitted by the two sides but did not seek to have the common pleas court resolve the matter. This Court does not construe this response as a waiver.

In its opinion the common pleas court explained why it awarded interest but did not explain its reasoning for choosing the amounts put forth by the Board Members over those of the City. The difference in the amounts and the common pleas court reasoning must be explained. Therefore, on this issue, this Court will vacate that portion of the order of the common pleas court and remand to the common pleas court for a determination of the basis for the award of interest.

## B. The Board Members.
### 1. Attorney Fees.

Turning to the Board Members' cross-appeal, initially they argue that the common pleas court erred when it declined to extend its award of attorney fees to encompass legal work for the litigation to invalidate the 2010 Salary Ordinance. Specifically, the Board Members sought compensation for 11.7 hours for time spent initially researching the SO claim immediately after its enactment and for 621.4 hours for time spent litigating the invalidity of the SO between the time of the Supreme Court's Reorganization Ordinance decision in September 2010, and the time of this Court's decision in March 2013.

First, the Board Members argue that the absolute constitutional prohibition in Article III, Section 27 of the Pennsylvania Constitution against

cutting the midterm pay of officers requires an award of attorney fees for litigation related to the invalidation of the SO.

While Article III, Section 27 was the basis for the determination of the unconstitutionality of the SO, there is no provision in it regarding the payment of attorney fees. Similarly, the Board Members cite to no case law, either in Pennsylvania or in other jurisdictions where courts awarded attorney fees as a remedy for an unlawful salary reduction.

The Board Members also put forth arguments that forcing the Board Members to pay for their own attorney fees is in effect a violation of Article III, Section 27, because it would reduce the compensation coming to them. This Court declines to extend the reach of Article III, Section 27 that far. The common pleas court did not err when it declined to award attorney fees in this instance.

The Board Members also contend that the common pleas court erred when it rejected an award of attorney fees for legal work in defeating the illegal SO under the City's Defense and Indemnification Ordinance. As this Court already determined that the Defense and Indemnification Ordinance did not apply to the Category One fees, similarly the salary reduction by the City did not constitute an "action" under the Defense and Indemnification Ordinance.

Next, the Board Members contend that the common pleas court erred when it foreclosed a trial on the full extent of the City's alleged vexatious conduct in relation to the SO. The Board Members concede that the "American Rule"

requires each side to pay for its own litigation fees and costs absent some exception or showing of bad faith or vexatious conduct. <u>Lucchino v. Commonwealth</u>, 809 A.2d 264 (Pa. 2002). The Board Members assert that the "systematic course by which the City doggedly applied the SO for years of litigation presents a *prima facie* case of bad faith, obdurate, dilatory, and vexatious conduct." The Board Members' Brief at 64-65. The Board Members argue that the alleged vexatiousness of the City was a factually disputed matter and the common pleas court erred when it granted summary judgment in the favor of the City. The Board Members ask that this Court remand this matter to the common pleas court for reconsideration of this issue.

The Board Members point to their brief to the common pleas court that lists the alleged vexatious conduct. However, a review of that brief reveals that many of the alleged vexatious acts have no relationship to the 633.1 hours that the Board Members spent litigating the SO's validity. This Court finds no error on the part of the common pleas court on this issue.

## 2. Economic Loss for Income Taxes.

Next, the Board Members contend that the common pleas court erred when it disallowed compensation for the Board Members' economic loss due to higher income taxes that resulted from a combined, multi-year lump sum payment. The Board Members assert that the City's decision to pay all of the amounts due from the illegal mid-term reduction of salaries under the Salary Ordinance in one lump sum resulted in the Board Members earning more in the year they were paid such that they paid more in income taxes than if the salaries had been paid when

32

they were supposed to have been paid. The Board Members argue that this result was contrary to Article III, Section 27 because it served as a further diminution of the salaries that were due the Board Members.

The common pleas court determined, "Although it may be true that Plaintiffs' [Board Members] will incur higher tax income liability as a result of receiving backpay in one lump sum rather than spread over three years, Plaintiffs [Board Members] did not provide any authority for awarding compensation for such consequences. This award is not cognizable under Pennsylvania law." Opinion at 15.

This Court agrees with the common pleas court.

**IV. Conclusion.**

Accordingly, this Court reverses the award of Category One attorney fees, vacates and remands this case to the common pleas court for a determination of the proper amount of interest due each Board Member, vacates and remands this case to the common pleas court for a determination of the hourly rate for the Board Members' attorneys for use in calculating an award of reasonable attorney fees, and affirms in all other respects.

_____
BERNARD L. McGINLEY, Judge

33

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlesretta Meade, Robert N.C. Nix, :
Honorable Russell M. Nigro, Honorable :
Alan K. Silberstein, Anthony Lewis Jr., :
and Molly Goldsmith, personal :
representative of the estate of Howard :
M. Goldsmith, deceased :
                              :
              v. :
                              : No. 1309 C.D. 2014
City of Philadelphia, : No. 1332 C.D. 2014
             Appellant :

## O R D E R

AND NOW, this 30th day of December, 2015, the orders of the Court of Common Pleas of Philadelphia County are reversed with respect to the imposition of Category One Attorney Fees. With respect to the award of interest, the orders of the Court of Common Pleas of Philadelphia County are vacated, and this case is remanded to the common pleas court for a determination of the interest due each member of the Board of Revision of Taxes. With respect to the calculation of attorney fees, the orders of the Court of Common Pleas of Philadelphia County are vacated, and this case is remanded to the common pleas court for a determination of the hourly rate to be used for the calculation of attorney fees based in part on the actual rate of the attorneys used by the members of the Board of Revision of Taxes. The orders of the Court of Common Pleas of Philadelphia County are affirmed in all other respects. Jurisdiction relinquished.

_____
BERNARD L. McGINLEY, Judge